UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHERIE TUCKER,

                                                                                              DECISION AND ORDER

                         Plaintiff,

                                                                                             18-CV-6887L

                         v.

SEI GROUP DESIGN,
BRIAN CIESLINSKI, Individually,
VICTOR TOMASELLI, Individually, and
GIAN-PAUL PIANE, Individually,

                         Defendants.
_____

       Plaintiff brings this action against defendant SEI Group Design Architects, D.P.C. ("SEI"), an architectural firm, who employed her as a marketing coordinator from October 5, 2015 through November 30, 2016. Plaintiff's claims are also asserted against three officers of the corporation, in their individual capacities: senior principal Brian Cieslinski ("Cieslinski"), senior principal Victor Tomaselli ("Tomaselli"), and principal Gian-Paul Piane ("Piane") (collectively "individual defendants").

       Plaintiff alleges that SEI subjected her to race-based discriminatory termination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et. seq. ("Title VII"), and that the defendants collectively subjected her to discriminatory termination in violation of the New York State Human Rights Law ("NYHRL") and 42 U.S.C. §1981 ("Section 1981").

       Defendants now move for summary judgment dismissing the complaint (Dkt. #37). Under the requisite standards, plaintiff has failed to demonstrate that her termination was caused by any

racial discrimination or animus. Plaintiff has failed to show that defendants had a reason or motive to discriminate again her on account of race when they terminated her employment. Therefore, for the reasons that follow, defendants' motion is granted, and the complaint is dismissed.

## FACTUAL BACKGROUND

In the fall of 2015, plaintiff was referred to SEI by an employment agency, to interview for an open office manager/receptionist position. SEI's principals were impressed with plaintiff's credentials, and invited her to interview for a marketing coordinator position that SEI was in the process of creating, but for which candidates had not yet been sought. Plaintiff was interviewed by Cieslinski, Tomaselli and Piane for the marketing position, and was thereafter hired by SEI, by consensus of its principals. As Cieslinski stated in plaintiff's September 23, 2015 offer letter, "[e]ach of the individuals you met with believe you have that special spark and the capability of helping us grow and develop our firm in to the future. We could not have asked for a better candidate." (Dkt. #40-4). Plaintiff accepted the position with a starting salary of $47,000, and commenced work on October 5, 2015.

Plaintiff's reviews during her first year at SEI contained some constructive criticism, but her overall performance was described as "excellent," and rated 4.8 out of 5, in her October 2016 performance review. During the review process, plaintiff requested a salary increase, based on market research into similar positions. SEI agreed to raise plaintiff's salary by $15,000, effective October 18, 2016. (Dkt. #1, #40 at 2). However, a few weeks later, on November 30, 2016, SEI terminated plaintiff's at-will employment. SEI continued to pay plaintiff's salary through December 23, 2016, and her health care premiums through January 31, 2017, a gesture plaintiff testified was "because [SEI] knew [plaintiff] was dealing with some health issues" at the time. (Dkt. #40-8, 124:3-6).

The parties disagree as to the reasons for plaintiff's termination. SEI avers that in November 2016, it learned that: (1) plaintiff had stated on her résumé that she had earned a Bachelor of Science degree from SUNY Brockport, and had been recognized in Who's Who Among College Students in 2011, but both of these credentials were false; (2) plaintiff had repeatedly, and on three specific dates in November 2016, submitted time cards indicating that she had worked a full day, when in fact she took "paid time off" during those days; and (3) plaintiff had charged unapproved and improper personal expenses to her company credit card, including purchases of shoes, hair supplies, gas for her personal vehicle, and a hotel stay.

Plaintiff argues that these matters were pretextual, and that the real reason for her termination was unlawful discrimination. Plaintiff notes that she was the only African-American employee out of the approximately thirty (30) employees at SEI. She states that when her employment was verbally terminated, her résumé was not mentioned, and that the only reasons given were that there were discrepancies with her time cards, that she "did not assimilate well with [SEI's] culture," and that there were unspecified "credit card issues." (Dkt. #40 at 2, Dkt. #40-8 at 120-25).

On September 12, 2017, plaintiff filed an EEOC charge alleging unlawful race-based employment discrimination, and was issued a right-to-sue letter on September 7, 2018. This action followed.

## DISCUSSION

### I.  Applicable Standard

Summary judgment is appropriate if there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. Proc. 56(c). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. A dispute

is genuine where the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich v. Randolph Central Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992). In considering a motion for summary judgment, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmovant: the Court cannot make credibility determinations, weigh the evidence or draw inferences from the facts. *Id*.

The Second Circuit Court of Appeals has "repeatedly expressed the need for caution about granting summary judgment to an employer in a discrimination case where, as here, the merits turn on a dispute as to the employer's intent." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). At the same time, it is well settled that "the salutary purposes of summary judgment—avoiding protracted and harassing trials—apply no less to discrimination cases than to . . . other areas of litigation." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (internal quotation marks omitted).

## II. Discriminatory Termination in Violation of Title VII, NYHRL, and Section 1981

The Court analyzes Title VII racial discrimination claims using the familiar burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).[1] Initially, plaintiff must make out a prima facie case of discrimination by demonstrating that: (1) she is a member of a protected class; (2) she was qualified for the position at issue; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009). "The burden of establishing a prima facie case is not onerous, and has been frequently

---

[1] Discrimination claims under Section 1981 and the NYHRL are subject to the same analysis as Title VII claims, and will rise or fall with them. *See Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2012); *Ruiz v. County of Rockland*, 609 F.3d 486 (2d Cir. 2010).

described as minimal." *Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998) (internal quotation marks omitted).

If the plaintiff successfully establishes a prima facie case, "the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action." *United States v. Brennan*, 650 F.3d 65, 93 (2d Cir. 2011) (internal quotation marks omitted). In so doing, the defendant employer "need not persuade the court that it was actually motivated by the proffered reason." *Delaney v. Bank of Am. Co*rp., 766 F.3d 163, 168 (2d Cir. 2014) (internal quotation marks omitted).

If the employer meets that burden, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004). Stated differently, the plaintiff has the burden to show "that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision." *Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 343, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013).

Here, the first three elements of prima facie case – that plaintiff is a member of a protected class, that she was qualified for her position, and that she was subjected to an adverse employment action in the form of termination – are undisputed. Given the minimal threshold for demonstrating circumstances that permit an inference of discrimination, the Court finds that plaintiff's testimony that she was the only African-American employee at SEI during the relevant period, that her duties were later assigned to a newly-hired Caucasian employee, that a racist comment was made during the hiring process, and that her employment was terminated despite positive performance reviews,

5

are sufficient to raise an inference of discrimination, for purposes of establishing her prima facie case.

The burden of establishing a prima facie case is minimal, and defendants do not contest it. But defendants have articulated multiple legitimate, non-discriminatory reasons for plaintiff's termination, any one of which was a legitimate basis for termination. These matters, which apparently came to light suddenly, included issues relating to inaccurate notations on time cards, improper personal charges on a company credit card, and some interpersonal difficulties between the plaintiff and some coworkers. These serious matters justify termination and, therefore, if plaintiff is to proceed further, she must demonstrate sufficient evidence by which a reasonable juror could conclude that her termination was in fact motivated, at least in part, by race-based discrimination. Plaintiff has failed to meet that standard.

In reviewing the instant motion, the Court observes that it is not the Court's role "to review the correctness of employment decisions or the processes by which those decisions are made." *Sassaman v. Gamache*, 566 F.3d 307, 314 (2d Cir. 2009). An employer is free "to hire or fire employees according to its own criteria, so long as they do not include unlawful discrimination." *Velez*, 2009 U.S. Dist. LEXIS 106465 at *41. Plaintiff was an at-will employee and therefore an employer could fire her for any reason, or for no reason at all as long as it was not based on any discriminatory motivation. In analyzing claims of discriminatory termination, the Court does not judge whether the termination was wise or harsh. An employer's employment decisions are not for this or any other court to second guess.

Construing all inferences in plaintiff's favor, plaintiff has failed to produce evidence sufficient to convince a reasonable trier of fact that the defendants' proffered reasons for

terminating her employment are pretextual, and that discrimination, more likely than not, played a role in her discharge.

Although plaintiff attempts to minimize them, she does appear to concede that there were false or misleading entries on time cards that she was required to complete, and that she did make some personal purchases on a company credit card. Plaintiff testified that any inaccuracies in her time cards were unintentional, and that she did not think her use of the company credit card for personal items was improper, as the items in question were either purchased for use during travel or conferences, or else were later returned, and the company credit card refunded.[2] At the same time, plaintiff does not dispute the essential truth of the reasons provided by SEI for her termination – that is, she does not deny that the inaccurate time cards and questioned purchases were hers – and has not presented any evidence that other employees engaged in comparable conduct, but were treated differently.[3] These facts are crucial and defeat her claim.

In attempting to prove pretext, plaintiff also points to her status as the only African-American employee at SEI during her tenure, and alleges that several months after her termination, SEI hired a Caucasian woman as a Business Development Director, a position which subsumed the duties plaintiff had previously performed. These matters fall woefully short of establishing race-based discrimination. The fact that plaintiff was the only African-American on

---

[2] Plaintiff has clearly raised issues of fact as to whether some of the reasons behind her termination were the result of misunderstandings, which SEI regrettably did not allow plaintiff a chance to explain. However, "merely disagreeing with an employer's assessment, or even suggesting that an employer has not been fair in its stated reasons for terminating an employee does not satisfy a plaintiff's burden [to rebut the employer's legitimate, nondiscriminatory reasons: plaintiff] must raise a genuine issue of material fact that the decision to terminate h[er] was motivated at least in part by an *unlawful* reason." *Jensen v. Garlock, Inc.*, 4 F. Supp. 2d 219, 222 (W.D.N.Y. 1998) (emphasis in original).

[3] Although plaintiff does suggest that other employees were "problematic" when it came to time cards and were not terminated, the deposition testimony plaintiff cites in support of this proposition does not actually relate to the type of time card discrepancies for which plaintiff was allegedly fired. The testimony from Cieslinski upon which plaintiff relies merely indicates that employees sometimes forgot to update time cards when they were absent, and had to be contacted by SEI's receptionist to determine where they were. There is no evidence that other employees deliberately indicated that they'd worked a full day when they were out of the office on paid time-off. (Dkt. #40-7 at 48-49).

staff is of no moment. That was the case when plaintiff was hired and her hiring hardly suggests discrimination; in fact, it suggests the very opposite. Also, the fact that a Caucasian woman was hired after plaintiff was terminated is not sufficient evidence that her termination was race-based. These matters are the only matters set forth by plaintiff to defeat defendants' legitimate non-discriminatory reasons for termination.

Here it is important to note the Second Circuit's consistent holding that where an individual was hired, and later fired, by the same person or persons within a short time frame, that fact undercuts an inference of discriminatory motive. *See Whipple v. Reed Eye Assocs.*, 524 F. Supp. 3d 76, 88 (W.D.N.Y. 2021) (citing *Schnabel v. Abramson*, 232 F.3d 83, 91 (2d Cir. 2000) (plaintiff's hiring and firing by same person within three years is "highly relevant" and weighs in favor of granting summary judgment for the employer in an age discrimination case)). The "same actor" inference is based on the common-sense assumption that a person is favorably disposed toward a plaintiff at the time of hire is unlikely to develop discriminatory animus against them soon thereafter. *See, e.g., Cordell v. Verizon Comm's, Inc.*, 331 Fed. App'x 56, 58 (2d Cir. 2009); *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997).

In this case, plaintiff was a relatively new employee and the same group that she now claims acted with racial animus, hired her approximately a year previously. That fact is highly relevant here. Until defendants discovered the several serious matters related to plaintiff's time cards and credit card charges, plaintiff's employment had been favorable and in fact defendants had recently agreed to a very substantial raise. It makes little sense to conclude that defendants acted toward plaintiff with some racial animus when there was no evidence of that in their hiring of plaintiff, favorable reviews, and salary increase. Furthermore, defendants appear to have been

quite reasonable as to the timing of the some of the consequences of plaintiff's termination. Her salary and health benefits were continued for a not insubstantial period.

Absent some additional evidence that the dearth of minority employees, or the selection of plaintiff's replacement, were themselves motivated by race. *See Davis v. Oyster Bay-East*, 2006 U.S. Dist. LEXIS 82914 at *32-*34, *37-*38 (E.D.N.Y. 2006) (holding that the under-representation of African-Americans in a workplace is insufficient to establish pretext, absent some evidence linking the alleged under-representation to racial discrimination, and that while a minority plaintiff's replacement by a Caucasian is sufficient to raise an inference of discrimination in the prima facie case, it does not rebut the employer's legitimate, non-discriminatory reasons for the adverse employment action, absent evidence that the successor was selected because she was Caucasian). *See also Mitchum v. ITT Educ. Servs.*, 2013 U.S. Dist. LEXIS 137084 at *28 (N.D.N.Y. 2013) ("being replaced by a Caucasian is not sufficient to rebut a nondiscriminatory reason for termination"). Here, plaintiff offers no evidence that the lack of African-American employees at SEI, or the selection of a Caucasian woman to perform plaintiff's prior duties (in addition to others, and as part of a wholly different job title), were the result of racial discrimination.

Plaintiff worked for defendants for over a year and she makes no claim that during that time she suffered any discrimination by defendants, or any other employee, and apparently was never subjected to any discriminatory or racially disparaging remarks. As already mentioned above, until the defendants discovered some improper practices, they were impressed with her performance and agreed to an increase in salary.

Plaintiff does make reference to a comment that one of the principals allegedly made prior to her hire. Plaintiff claims that she was told by Cieslinski in March 2016, in an apparent effort to

9

"compliment[]" her, that at some point *prior* to her hire, one or more of SEI's other senior principals had allegedly stated, "[y]ou know she's Black. We don't have to hire her," but that Cieslinski had "stuck up" for her. (Dkt. #40-1 at ¶6, #40-8 at 136:6).[4]

Manifestly, the comment referenced plaintiff's race, but its intent is certainly ambiguous and Cieslinski denies the conversations. However, any animus it contained is undercut by SEI's rejection of it: regardless of whether the comment was intended to discourage SEI from hiring plaintiff because of her race, SEI *did* hire plaintiff. *See Downey v. Adloox, Inc.*, 789 Fed. App'x 903, 907 (2d Cir. 2019)(discriminatory comments concerning plaintiff's age, made during job interview, do not "create a genuine issue of fact for trial" as to plaintiff's age-based discriminatory termination claim, where the commenter proceeded to hire the plaintiff anyway, and the comments didn't relate to the plaintiff's later termination)(unpublished decision); *Tullo v. City of Mt. Vernon*, 237 F. Supp. 2d 493, 502 (S.D.N.Y. 2002)(race-based comment made prior to hiring does not constitute evidence of race-based discrimination, where the applicant "was hired anyway, and thus [the] remark had no discriminatory effect," and where the comment was not close in time to the adverse employment action).

Also, as referenced, it is undisputed that the persons involved in plaintiff's hiring, raise, and termination were the same group of individuals. SEI's principals requested that plaintiff interview for the marketing position they were developing, collectively decided to hire her into it, assessed her performance as "excellent," awarded her a significant pay raise after her first year, and terminated her employment only after it was discovered that she had submitted inaccurate time cards and made questionable purchases on a company credit card. Then, they voluntarily opted to

---

[4] At his deposition, Cieslinski denied ever having made the comment, and defendants point out that in her EEOC complaint, plaintiff had described it as consisting solely of the words, "you know you don't *have* to hire her," with no mention of plaintiff's race. (Dkt. #40-6 at ¶4). Granting plaintiff every favorable inference, the Court credits plaintiff's more recent description of the comment for purposes of this motion.

continue to pay her salary and benefits for an additional 1-2 months after her termination. The fact that these decisions and acts were all undertaken by the same decision makers, within a relatively short period of time, undercuts any inference that plaintiff's termination was discriminatory.

Finally, to the extent that plaintiff contends that she was not initially informed of all of the reasons for her termination that SEI now relies upon, SEI's failure to provide plaintiff with a full explanation of its reasoning does not, by itself, present any inconsistency or contradiction suggestive of pretext. Indeed, it is undisputed that three of the four reasons now given by SEI for terminating plaintiff's employment were mentioned to plaintiff at the termination meeting. Any one of them was a legitimate, nondiscriminatory basis to terminate an employee.

In sum, the evidence offered by plaintiff is insufficient to rebut the defendants' legitimate, nondiscriminatory reasons for terminating plaintiff's employment. Plaintiff's claims of discriminatory termination are accordingly dismissed.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment dismissing the complaint (Dkt. #37) is granted, and the complaint is dismissed in its entirety, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       December 14, 2021.